Good morning, your honors. May it please the court, Timothy Scott for the petitioner Wayne Chick. I confess to your honors that we present the third equitable tolling argument of the morning. I want to stay with the theme of equitable tolling. That's right. The thematic argument. Good way to get the week going. That's right. Equitable tolling. Although I would submit to the court that this argument is somewhat more discreet and circumscribed than the ones we've heard before. And specifically what I mean is Mr. Chick, who is serving a life sentence, had his federal habeas petition denied and dismissed on the papers without a hearing or without any factual development of the record. Our argument, in essence, is that there should be a remand for two reasons, two purposes. For a factual development of the record on his mental health claim as to equitable tolling and for factual development of his equitable tolling claim that he was separated from his legal materials and his paperwork while he was in the segregated housing unit. Now, as to the mental health claim, the controlling case, in our view, is LAWS versus LOMARK. And LAWS stands for the proposition that a petitioner is entitled to some sort of factual development, whether an evidentiary hearing or some limited discovery or some other vehicle to unearth the factual merits of a case, when they have made a good faith allegation as to equitable tolling, which, if true, would entitle them to relief. Doesn't your case sort of fall between the LAWS case and then the Roberts case? That's right. It seems to say that if there is countervailing evidence, then you don't get necessarily the need for an evidentiary hearing. So where do you – because in this case, there is some. I realize you contend that it isn't sufficient, but there's some evidence in the record. So why aren't you closer to Roberts than LAWS? Roberts is distinguishable for several reasons. The first is that in Roberts, there was what the court at the time, or this court, described as, quote, extensive evidence, crucially within the limitations period, that tended to undercut and rebut the petitioner's claim. In the Roberts case, within that one year that was at issue, there was what was described as extensive medical records, treatment plans, informed consent, what medication was given and why it was given. And so looking at the evidence that existed within that period, the court felt comfortable making a factual determination that there was no way the petitioner could prevail on the claim. So that's one distinguishing factor. But in this case, don't we have granted the particular period, if I understand it correctly, is 2008 to 2010, where you say there is an absence of evidence? Right. October 7th, 2008 to October 7th, 2009 is the limitations period. Okay. But before that, and not that long before that, we have some evidence that indicates sufficient mental capacity. And then we have some post that period. And we have some evidence that I know you say is potentially misinterpreted, but that your client stays stable. So can't we infer from the fact that we have both a before and an after and an indication during the period that he has remained stable, isn't that sufficient evidence? There's a factual and a legal response to that question, Your Honor. Factually, I think that the inference actually shows a trajectory which inclines towards declining mental health, if you will. From the state court proceedings, we have evidence of some clinical depression. We have evidence of him confessing to what would be a heinous crime of murdering his parents, which was without factual support. I would suggest that that suggests mental health issues by any standard. And that was in state court. But by the time in the pre-limitations period he's in federal, excuse me, state custody, we have evidence that he's taking psychotropic medications, which we might infer are not prescribed lightly, tend to be prescribed for schizophrenia or bipolar disorder. And he's being monitored daily to ensure that his mental health stays stable. Now, crucially, so that's kind of marking the trajectory. And then crucially, and this is why I think we're closer to laws than we are to Roberts, is within the limitations period, the only evidence we have one way or the other is his verified pleading and his uncontroverted statement, his unrebutted statement and claim that he was mentally incapacitated. So let me just press on that for a moment. In order to – the standard is that the petitioner has to make allegations that, if true, entitled him to equitable tolling. And we've said for mental illness that the mental impairment was so severe that either he was unable to rationally or factually understand the need to timely file or his mental state rendered him unable personally to prepare a habeas petition and effectuate its filing. I wasn't sure that there was any clear allegation of that degree of mental impairment in the record. There were some statements about that he had mental illness. It prevents him from fighting against the state's high-ranking attorneys, language like that. But nothing that seemed to go directly to that standard. Can you point me to what the best language is for that? I can point, Your Honor, to the claims that he made, where there's a sort of fill-in-the-blank form on the form habeas filing, and it volunteers that he's after the deadline. And then when asked why, he says because of mental health. And I'll see if I can pinpoint that for you, Your Honor. There was a statement that petitioner is mentally ill and has finally found an inmate who is able to follow rules of the court. Yes, that's ER at 60. And is that the strongest statement that meets this standard? It's that coupled with page 45 of the ER, where it says petitioner is late, according to ADEPA. Petitioner Wayne Chick, late filing of habeas is due to mental illness and being sexually assaulted in prison. So I'm prepared to concede to the court that at the pleading stage, based on what he put in his paperwork, he would not be able to meet what's called the high burden under the bills case, I think is now the lead case, of meeting those two prongs. Just at the four corners of the pleadings, he hasn't factually tipped the scales in his favor on the merits in a conclusive fashion. I'm prepared to concede that. But that's a different question than the one that is presented, because as the law's case again said, although it's ultimately the petitioner's burden, it's not their burden to conclusively show, by that quantum of evidence, in the pleadings itself. It's the allegations, though. I mean, that's what I was looking for. He has to make an allegation that, if true, would entitle him to relieve. That's right. And our position, I think, and it's supported by the case law, is that he acknowledged he's late, and he claimed that the reason he's late is because of mental illness. For a pro se petitioner, liberally construed with inferences in favor of him, that ought to get it done under this court's case law. It doesn't parrot precisely the words of this court's jurisprudence, but I think that's a higher standard to hold a pro se petitioner to than this court's case law requires or allows a district court to hold him to. Ultimately, well, let me just move on, since I have two minutes, to the second claim, which is that his segregation in the segregated housing unit and his deprivation of his legal papers also and independently prohibited him from filing. The key problem with dismissal on that basis, or with the denial of that claim, was that fundamentally it boils down to one assumption on the part of the district court, one factual assumption. And that assumption was, because on page 54 of the ER, the transfer order that approved him to be sent out of the SHU or out of the segregating housing unit to a different facility, that authority elapsed on October 22, 2008, without leave to seek new authority. Now, from that piece of paper that said, if this goes longer than October 22, you'll have to come back and get new permission, from that one fact, the magistrate court and then the district court assumed, and I think they used the word presumed, but it's perhaps a distinction without a difference, that that was categorically the latest that that person could have been transferred and categorically the latest that they would have been reunited with their legal papers. Isn't it then your burden to, it may not be an ironclad piece of information, evidence, but at this point, isn't it your burden to then somehow provide some basis to conclude it didn't happen? Ultimately, yes. Clear error, so we would need some evidence showing that. I mean, the clear error standard is very high for us, you know, rotting fish and all that. Right. Although I think when it's clear that it's admittedly an assumption or a presumption, as opposed to a factual finding, a resolving of competing evidence, I'm not sure at the outset the clear error applies. And secondly, to respond to your Honor's question, although ultimately Mr. Chick bears the burden, it was incumbent upon the district court in a pro se setting to at least, again, this could be relatively circumscribed discovery, find out when he was transferred. Just as a factual matter, and find out as a factual matter when he was reunited with his papers. And that would have been easy enough to do, and that would have resolved the issue. And I see that with that my time has expired. Thank you very much, Your Honor. Lynn McGinnis, Deputy Attorney General for the appellee. May it please the Court. It took me an hour to get two miles. I could not find the courthouse for the life of me. I will start with the second issue. I'm glad you finally found it. I was just two miles away, and I had to call someone from my office in San Diego to get here. So I apologize for any inconvenience. To start with the second issue, the question is whether there is discovery. I mean, it's really a broader question. The question is whether there's discovery or an evidentiary hearing every time there's some kind of allegation in a petition of entitlement to equitable tolling. Now, here, as far as the transfer to administrative segregation, what I'll point out, and it was pointed out in the briefs, is, first of all, that we responded by saying that the transfer was on October 22, 2008. And Mr. Chick had an opportunity to come back and rebut that. He filed an objection or a traverse, and he didn't say, no, no, no, that's wrong. It wasn't October 22nd. It was at some later time. And he did not rebut that. So with that unrebutted factual evidence before the district court, the district court made a factual finding. And later on, when Mr. Chick did his objections to the R&R, he did not challenge that factual finding. So does it matter that the district court used the word presume? I think opposing counsel is saying that makes it something other than a factual finding. I don't think so, Your Honor, because when he has a chance to come back, I mean, that becomes an unrebutted presumption when he doesn't come back and say that's a wrong presumption. If you look at the paperwork, the paperwork that Mr. Chick filed was actually filed from the transfer institution. So we know that he was, in fact, transferred. He was transferred to the new prison. The other thing is I don't think it matters whether he was deprived of some paperwork or not. What he said was that he was deprived of his Bible and some personal papers. He never said that deprivation, he was deprived of his access to his law library or that he couldn't file anything because of the deprivation. In fact, what the record shows in this case is that he filed some grievance forms. So he was still filing things during that time period. So the appellee fails to see any nexus between the deprivation of some materials that he didn't have and the untimely filing of the federal habeas petition in this case. So there would be no need for an evidentiary hearing to take any further factual development on that matter, just simply alleging, well, I didn't have some of my paperwork does not trigger the right to an evidentiary hearing. On the mental illness question, what we have here, and when I first looked at this, I thought, too, that it was somewhere between laws and Roberts. But I think what we really have here is a weaker case than even laws because what you had in laws is a petitioner who submitted a great deal of paperwork in his petition showing that he was, in fact, severely mentally ill. There were psychiatric reports. There was material showing that he was incompetent to stand trial or that three doctors thought he was incompetent to stand trial. And there was no countervailing evidence. In Roberts, you have a petitioner submitting stuff showing that he was mentally competent during the time period. Here you have a petitioner submitting absolutely nothing showing that he was mentally incompetent during the limitations period. What you have is a petitioner saying, I was mentally ill, and then you have paperwork showing that during the time that he was awaiting trial in this case, he was upset because it was taking too long to go to trial, and that some doctor thought he was not mentally ill. And then you have a form saying that he was prescribed some medication, but he was stable at the time. So, again... But as your counterpart points out, I mean, stable simply presumes a fact, which is whatever was the case before, it continues. That doesn't tell us very much about the particular mental situation that the petitioner finds himself in, does it? It doesn't tell us very much, but the question is whether you can have a petitioner who submits just a statement saying, I was mentally ill. And this is more of a legal question than anything else. If you have a petitioner just saying, I was mentally ill, and I finally found an inmate capable of helping me or available to help me, is that enough to trigger a right to discovery and an evidentiary hearing? Well, our standard is whether the allegations, if true, would entitle him to relief. And opposing counsel suggests that the allegations that are in the record, read in context, and with the understanding that he was pro se, are sufficient to make that allegation. And it seems to me if they're sufficient to make that allegation, then we go to the robber's inquiry as to whether there's countervailing evidence in the record. Right. So the threshold is, is that enough, taken in context and understanding he's pro se? Well, Your Honor, if Robert seems, Laws seems to say that all you need to do is make an allegation, and then that triggers your right to an evidentiary hearing. A good faith allegation. A good faith allegation. But if you look at more detail, and if Laws really says that, then all you have to do is submit a petition that says, I was mentally ill and I finally regained sanity. And then you get an evidentiary hearing on the matter. That's of some concern. And I think we don't always jump to an evidentiary hearing at first. Right. The response comes in from the state. The state can submit whatever documentation they want. The district court can also enter orders directing, if the state doesn't, the district court can always enter orders saying, provide the court with whatever mental health records are available from the prison. The state can, but. You don't jump right to an evidentiary hearing. There's a lot that takes place before that time. The question is, though, does the state have the obligation to do that? Now, granted, if I was doing this today, and I'll be honest with the court, I did this petition about, this response about five years ago. Today I just order up all the records. You submitted to the district court. And they say, here, show it. Doesn't show anything. Yeah. And that, you know, if the court's going to order a remedy short of affirming, that's what we request, is just an order that we get the records from the institution rather than go back for a full evidentiary hearing. But I think it's an important question, and that is whether ‑‑ I see countervailing evidence in this record, and that is that there's a doctor who describes the petitioner as not mentally ill. Which document are you referring to? So I can just follow along more completely. This is on ER, and I apologize for flipping through the documents. Dr. Souter on ER 49. Souter found no mental disorder. But when did he do that? That was not during the ‑‑ That was not during the limitations period. There's also later on when they talk about his mental health and they describe him as stable, and they also describe his health as good. It also says that Chick was able to participate in the proceedings and he did not need assistance. The other evidence that's in the record that I think is very important, and we pointed it out in our briefing, is that Chick, in fact, submitted, and granted it's not the same, but it's evidence in the record. He submitted these grievance forms during this time period where he had records that he gave us, and in these grievance forms he said, I am upset, I'm not getting this, I'm not getting that, I'm forwarding these requests to my lawyer. So that indicates that ‑‑ They rejected them. He didn't sign it, and he didn't put in the correct box what relief he was requesting, but in the box that preceded where he was supposed to put what relief he was seeking, he said what he wanted. They just rejected it. They rejected it, but it shows that he was able to file stuff. And I also want to point out, Petitioner has some responsibility here, and when we come back in an answer and we say, look, these records tell us that Mr. Chick, and at this point Mr. Chick has this inmate assistance, and he's filing this federal petition, so presumably the mental capacity or incapacity has been lifted. Mr. Chick files this federal petition, and we come back and we say, look, Mr. Chick, the evidence in the record belies your claim. This evidence says you're stable, it says that you're filing grievances, it doesn't show any causal connection between your mental health and the limitations period. Give us something here, Mr. Chick. And he comes back and he responds to our answer, and he doesn't give us anything. He doesn't say, no, you're wrong, and he doesn't even have to submit any records, because granted it's hard for a petitioner to get records. But when he comes back and he doesn't say, no, you're wrong, I was in fact in mental care during this period, he doesn't submit anything. He just says, I'm preserving this for appellate review. And then the district court submits an R&R, and his objection just says, I'm submitting this for appellate review. We've given him two more opportunities to tell us something about the limitations period. And now he's coming up here and saying he wants an evidentiary hearing. We've given him several opportunities to submit something, and he hasn't done that yet. And under these circumstances, with him as a burden to show some good faith and showing us something during the limitations period, and he hasn't done that, we would submit that in these circumstances he's not entitled to a hearing. And to some extent, it goes back to Judge Pius's point. If you make the verified petition, it then shifts the burden for the purpose of determining whether or not you need an evidentiary hearing to you. And then when you don't provide anything that covers the relevant period, at that point, it doesn't seem unfair to say evidentiary hearing has been triggered simply by the verified petition. Well, to us, we feel something more should be required. But as we said, the next step would not necessarily be an evidentiary hearing, but just to get some records. Right, the district court can augment the record in many different ways, and we used to do that all the time. And that's what we do now is we get the records. Can I ask you, somebody who's deep into the system of the prisons and all the nomenclature and all that, what does it mean when it says, you know, in this form, the California Department of Corrections and Rehabilitation form, it was ER 54, I believe. It's the one I think you just referred to. Right. It has all these little acronyms. Mental health clinician spoke to Chick regarding his administrative segregation unit placement, noting Chick is a participant in the MHSDS at the CCCMS. From within the, you know, the community, what really is going on with that little statement? I believe Mr. Scott knows what CCMS is. MHSDS is Mental Health Services Delivery System. I guess I realize it refers to mental health. Right. I'm just trying to figure out what does it really mean? I think it means he's receiving some level of counseling or medication, but I'm not really sure. I believe Mr. Scott probably knows. All right. And with that, we would submit it. Okay. Thank you. You have a minute rebuttal. Thank you, Your Honor. As to the fact that Mr. Chick filed several grievances, cop-outs or 602s, as they're known, one, that's a far cry from preparing a habeas petition, and so I think that it's an inapt analogy from the beginning. But secondly, and perhaps more importantly, that, too, just like all of the other mental health evidence, predates the limitations period, and so it doesn't shine a light on his mental state during the applicable period of time. I just wanted to finish my thought, and this ties into distinguishing the Roberts case. The second thing, in addition to extensive medical records within the limitations in Roberts, was that also within the limitations period in Roberts, that petitioner was filing multiple habeas petitions in the state courts, thereby affirmatively demonstrating that he had the wherewithal to do that. And that, too, distinguishes the case from Mr. Chick's. Finally, Roberts was a four-year delay. Mr. Chick needs to prove a mere 10 months by comparison. Thank you. Thank you. Thank you, counsel. We appreciate your arguments, and safe trip back to San Diego.
judges: Seeborg, Paez, Ikuta